# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00383-SCT

*JAMES T. ROCHE*

**v.**

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT: 01/23/2004
TRIAL JUDGE: HON. R. I. PRICHARD, III
COURT FROM WHICH APPEALED: PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: JOHN A. HOWELL
ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY:
    JEFFREY A. KLINGFUSS
DISTRICT ATTORNEY: CLAIBORNE (BUDDY) McDONALD
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 04/14/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. A Pearl River County Circuit Court jury convicted James T. Roche of commercial burglary. The trial court subsequently sentenced Roche, per Mississippi's habitual offender statute, Miss. Code Ann. § 99-19-81 (Rev. 2000), to seven years in prison without eligibility for parole. Roche now appeals the conviction which we affirm.

## FACTS

¶2. In the early morning hours of November 12, 2002, Officer Raymond Rickoll, an off-duty police officer, sat on his front porch smoking a cigarette when he noticed a two-toned,

gold or champagne-colored Lexus pass by his home in Picayune two or three times. Officer Rickoll said he was intentionally keeping an eye on the Sunflower grocery store, about 100 yards away, because his training officer had advised him that drug activity had been going on near the store at night.

¶3.    At 1:57 a.m., he saw a black male get out of the Lexus, carry a black jacket in his hand, and approach the Sunflower.[1]   Officer Rickoll then heard banging sounds coming from the store but was unable to discern the source of the noise.   He called the police, describing the driver as a 195-pound black male, five feet, nine inches tall, wearing a black hat and black pants, and carrying a black jacket in his hands.   The man subsequently drove away before Officer Rickoll could reach him.

¶4.    Shortly thereafter, Officer Charles Esque, Jr. arrived at the Sunflower after hearing Officer Rickoll's message over the radio. After the store's owner arrived and opened the door, he and Officer Rickoll investigated the scene and discovered the window had been broken and two black cash till drawers were missing as well as the change that had been left inside them.[2] A third till drawer had been emptied of its change and left in the Sunflower parking lot.   The

---

[1]Rickoll testified the lights in the parking lot enabled him to observe the man.   We note that although the record includes photos of the different views from Rickoll's property (some of which preclude the possibility Rickoll could have seen the Sunflower at all), the photos were apparently taken on or next to the street.   This diminishes the helpfulness of the photos since Rickoll testified he was sitting on his porch when he witnessed the burglary and also specifically testified the photos did not represent an accurate depiction of his view from the porch.

[2]The owner, Nam Nguyen, testified that prior to the robbery it was his practice to count the bills and leave the change in the drawers.

officers discovered nothing else missing and later found the other two drawers discarded on different streets in Picayune.

¶5.     Officer Chad Dorn said that after receiving a call from dispatch conveying Officer Rickoll's description of the perpetrator, he noticed a "gold or brownish," two-toned Lexus traveling through east Picayune.   He followed the vehicle until it stopped at the local Texaco station.   James T. Roche, the driver, got out of the vehicle and started walking toward Officer Dorn.   The passenger, Joseph Parkman, exited the vehicle and entered the store.   After Roche asked what was going on, Officer Dorn informed him he was driving a vehicle believed to be involved in a local burglary.   At that point, Officer Dorn placed Roche in investigative custody.

¶6.     At 3:20 a.m., Officer Rickoll received a call from the police department summoning him to the Texaco station.   When he arrived, he recognized the Lexus as being the one he had seen about an hour and a half earlier.   The driver of the car, Roche, who is a black male, was wearing a black hat and dark clothing.   Officer Rickoll also noticed a black jacket in the back seat of the car.   Although he could not identify Roche's face, he testified that Roche was the same height and build of the man he saw in the Sunflower parking lot.   Slightly contrary to Officer Rickoll's initial description of the perpetrator was Roche's testimony that he is five feet, eleven inches tall (as opposed to five feet, nine inches tall) and weighs 220 pounds (rather than 195 pounds).

¶7.     Officer Esque looked through the window of the vehicle and saw two paper bags.   On one of the bags someone had written "Nickles - $7.00" and on the other bag someone had

3

written "Dimes - "$8.00."[3] Roche later stated he had hand-written the totals on the bags. Officer Esque also saw a black jacket in the back seat.

¶8.     The officers searched the vehicle and, in addition to the bagged change, found $11.50 in quarters, $0.20 in nickels, and $0.03 in pennies in the console. After examining the jacket in the back seat, Officer Esque said he noticed it was glittering with tiny pieces of glass.[4] The officers also found a car jack in the trunk. Finally, the officers confiscated three rolls of pennies Parkman used to pay for a pack of cigarettes.[5]

¶9.     At trial, Roche testified he and Joseph Parkman had been watching movies together, listening to music, and drinking alcohol that night. Both men testified that around midnight, Roche left the house and said he was going back to his house to rob his piggy bank.[6] He stated he drove home, took a jug full of change, emptied it, counted it all out, placed the nickels and dimes in separate bags, and returned by 12:30 a.m.[7] He testified that he and Parkman left sometime later to purchase cigarettes and liquor, and were confronted by police after stopping at the Texaco. Furthermore, on the stand, Roche contemporaneously estimated he "had about $10 or $11 worth of quarters" in the console, but stated that the large amount of quarters in his console was the result of dropping extra change in there over time.

---

[3]Officer Esque counted $7.00 in nickels in the first bag and $9.10 in dimes in the second.

[4]The State did not submit into evidence the pieces of glass described by Officer Esque.

[5]Although Nam Nguyen testified he believed some of the stolen change was loose and some wrapped, he was not completely certain.

[6]His house is six to seven blocks away.

[7]Parkman could not remember how long Roche was gone.

4

**ANALYSIS**

¶10.    On appeal, Roche raises five grounds of error: (1) the trial court erred in overruling Roche's objection to Officer Rickoll's identification of him as the perpetrator; (2) the trial court erred in failing to suppress evidence collected during the search of Roche's vehicle; (3) the trial court erred in refusing to strike the entire jury panel and declare a mistrial; (4) the verdict was against the overwhelming weight of the evidence; and (5) the evidence was insufficient to sustain the verdict.

### *A. Identification*

¶11.    Roche contends he was impermissibly identified by Officer Rickoll in a "show-up" procedure at the Texaco and argues the trial court's failure to sustain his objection to the identification violated his constitutional right to due process. The standard of review for trial court decisions regarding pretrial identification is "whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." *Ellis v. State*, 667 So. 2d 599, 605 (Miss. 1995) (citing *Magee v. State*, 542 So. 2d 228, 231 (Miss. 1989); *Nicholson v. State*, 523 So. 2d 68, 71 (Miss. 1988); *Ray v. State*, 503 So. 2d 222, 224 (Miss. 1986)). We will only disturb the order of the trial court "where there is an absence of substantial credible evidence supporting it." *Id.* (citing *Ray*, 503 So. 2d at 224).

¶12.    We have previously held that "pretrial identifications which are suggestive, without necessity for conducting them in such manner, are proscribed." *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982). The United States Supreme Court has also stated, "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a

5

lineup, has been widely condemned." ***Foster v. California***, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) (quoting ***Stovall v. Denno***, 388 U.S. 293, 302, 87 S.Ct. 1967, 11 L.Ed.2d 1199 (1967)).

¶13.   There is support for Roche's argument that it was impermissibly suggestive for the officers to use a show up procedure to assist in his identification.   When Officer Rickoll, the only witness to the crime, arrived at the Texaco the police were questioning only one man, Roche.   Roche wore the same type clothing Rickoll had seen the burglar wearing and stood next to a Lexus which was similar in color to the one Rickoll reported seeing the burglar driving.   Inside the car was evidence which ostensibly linked the driver to the crime.   Rickoll then identified Roche as the individual he saw breaking into the Sunflower.   To quote ***Foster***, "The suggestive elements in this identification procedure made it all but inevitable that [Rickoll] would identify [Roche] whether or not he was in fact 'the man.'   In effect, the police . . . said to the witness, 'This is the man.'" ***Foster***, 394 U.S. at 443.   The show up identification in question conspicuously singled Roche out and was impermissibly suggestive.

¶14.   However, the presence of an impermissibly suggestive identification is not the end of our inquiry.   Such identification is admissible if, considering the totality of the circumstances surrounding the identification procedure, the identification did not give rise to a very substantial likelihood of misidentification. ***York***, 413 So. 2d at 1383 (quoting ***Neil v. Biggers***, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).[8]   Reliability is the linchpin of the inquiry. ***Gray v. State***, 728 So. 2d 36, 68 (Miss. 1998) (citing ***Manson v. Brathwaite***, 432

---

[8]This standard applies to both in-court and out-of-court identifications. ***York***, 413 So. 2d at 1383.

6

U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Nathan v. State*, 552 So. 2d 99, 104 (Miss. 1989)). Under *Biggers*, the factors to be considered in evaluating reliability of the identification under the totality of the circumstances include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200; *see, e.g.*, *Gray v. State*, 728 So. 2d 68-69 (finding show-up procedure impermissibly suggestive but declaring identification reliable and admissible after reviewing circumstances under *Biggers* factors). We therefore review, under the *Biggers* factors, the reliability of Officer Rickoll's identification of Roche and weigh it against the corrupting effect of the suggestive identification.

### 1. Opportunity to view the accused

¶15.    Rickoll viewed the burglar from approximately 100 yards away at a very early hour of the morning. Though he testified the lighting in the parking lot enabled him to view the man, his opportunity to see the perpetrator's face was limited by his distance from the perpetrator and the darkness of the hour.

### 2. Degree of attention.

¶16.    As a result of being warned by his training officer, Rickoll was already vigilant about criminal activity going on in his neighborhood during late hours. This indicates the degree of attention to which he paid the event was heightened under the circumstances.

### 3. Accuracy of prior description

7

*¶17.* Rickoll described the burglar as a 195-pound black male, five feet, nine inches tall, wearing a black hat and black pants, carrying a black jacket in his hands, and driving a two-toned, gold or champagne-colored Lexus. Roche is a black male; he was wearing a black hat and black pants when Officer Dorn stopped him; he had a black jacket in the back seat of his vehicle; and he was driving a Lexus within the range of color Rickoll described. And though Roche testified he is, in fact, 220 pounds and five feet, eleven inches tall, the slight disparities in weight and height are, by no means, so inconsistent as to render Rickoll's prior description inaccurate.

### 4. Witness's level of certainty at confrontation

¶18. Upon seeing Roche at the gas station, Rickoll identified Roche as having the same height and build of the man he saw outside the Sunflower. He also was certain the clothing was the same clothing he described to the police when he reported the burglary. Even so, we note that Rickoll's certainty was necessarily limited by the fact that he had not seen the burglar's face.

### 5. Length of time between the crime and the confrontation

¶19. Rickoll identified Roche approximately an hour and a half after witnessing the burglary.

¶20. As noted above, the "show up" procedure used by the Picayune Police Department was impermissibly suggestive, but we do not turn a blind eye to the reliability demonstrated by Rickoll's identification of Roche. Though Rickoll's opportunity to view the accused may have been slightly limited, any concerns about the reliability of his identification are wholly alleviated by the degree of attention to which he paid the event, the level of certainty upon viewing Roche, the length of time between the crime and the confrontation, and, in particular,

8

the accuracy of his description despite the darkness of the hour and the fact that he was 100 yards away. As we stated in *York*,

> It can thus be observed that an accused who seeks to exclude identification testimony based upon an alleged due process violation faces a very heavy burden. Even though the pretrial identification is impermissibly suggestive, he must still show the conduct gave rise to a very substantial likelihood of . . . misidentification.

413 So. 2d at 1384. Roche has not met his very heavy burden of showing the conduct gave rise to a very substantial likelihood of misidentification, and this issue is without merit.

### B. Legality of Search

¶21. Upon placing Roche in investigative custody, the officers searched the Lexus and recovered a car jack from the trunk, two bags of change, an abundance of loose change, and a black jacket. Roche argues the trial court erred in failing to suppress evidence collected during the search of his vehicle. In determining whether evidence should have been suppressed, we will not disturb a trial court's findings of fact on appeal unless the trial judge applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence. *Taylor v. State*, 733 So. 2d 251, 255 (Miss. 1999).

¶22. "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions.'" *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). There is an exception to the warrant requirement in the context of vehicle searches. *Maryland v. Dyson*, 527 U.S. 465, 466, 119

9

S.Ct. 2013, 144 L.Ed.2d 442 (1999). When probable cause justifies the search of vehicle which police have lawfully stopped, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825. The United States Supreme Court has also stated,

> We made this clear in *United States v. Ross*, [456 U.S. at 809], when we said that in cases where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.' In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (per curiam), we repeated that the automobile exception does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.' *Id.* at 940.

*Dyson*, 527 U.S. at 467 (alterations omitted).

¶23. The search of Roche's vehicle falls squarely within the Fourth Amendment's automobile exception. The facts at hand justified issuance of a warrant to search Roche's vehicle. The car was readily mobile, and probable cause existed to believe it contained contraband; therefore, the Fourth Amendment permitted the officers to search the vehicle without a warrant. Every item the officers discovered came about as the result of a legal search. The trial court did not err, and we find this issue is without merit.

### C. Striking of Jury Panel

¶24. During voir dire, Roche's attorney asked the jury panel if Roche's prior convictions would have an influence on whether they perceived him to be less believable. Several of the jury members responded in the affirmative. The attorney then requested the trial court strike everyone who said they would find Roche less believable as a result of his prior convictions.

10

Rather than strike them, the trial judge questioned the jurors as to whether they could follow the applicable law even if the convictions Roche's attorney mentioned were raised during the trial. Since no juror responded that he or she could not follow the law, the judge denied the motion.

¶25. Roche argues on appeal that the trial court erred in refusing to strike the entire jury panel and declare a mistrial. Without citing any case law, he generally argues the trial court's decision irreparably prejudiced his defense and deprived him of due process under the federal and state Constitutions. Roche states, "While the trial court has no control over the understanding of the jurors as to the basic rights in a criminal trial, it is unlikely that jurors who believe a person should testify would be convinced by jury instructions that the presumption of innocence attends the defendant throughout the trial." He also argues "such an attitude or lack of understanding on the part of the jury has a chilling effect on the [d]efendant's right to be heard under Section 26 of the Mississippi Constitution."

¶26. Roche is procedurally barred from raising this issue for two reasons. First, he did not request a mistrial. We have held

> It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial.

*Box v. State*, 610 So. 2d 1148, 1154 (Miss. 1992) (emphasis omitted). We apply this rule in all cases unless a fundamental right is involved. *Id.* Though Roche cursorily names two federal constitutional amendments as well as two sections of the Mississippi Constitution, he

11

makes no specific arguments, reinforced with authority, which demonstrate a violation of any fundamental right. This issue is therefore procedurally barred for the additional reason of his failure to cite to supporting authority. See *Dycus v. State*, 875 So. 2d 140, 169 (Miss. 2004) ("[F]ailure to cite any authority may be treated as a procedural bar, relieving us of any obligation to consider the assignment."), *vacated and remanded on other grounds*, 125 S. Ct. 1589 (March 7, 2005) (for further consideration in light of *Roper v. Simmons*, 543 U.S. ___, 125 S.Ct. 1183 (2005)).

### D. Weight and Sufficiency of the Evidence[9]

*1. Sufficiency of the Evidence*

¶27. In the recent case of *Bush v. State*, __ So. 2d ___, 2005 WL 312039, *4-*5 (Miss. 2005), we discussed the standard which applies in a challenge to a verdict based on the sufficiency of the evidence:

> In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.' However, this inquiry does not require a court to
>> 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

---

[9]Roche's brief overlaps his arguments regarding the standards of weight and sufficiency of the evidence. We address them separately to provide a clear analysis of these two distinct issues.

*Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted)(emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render[, i.e. reverse and discharge]. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)(citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient.

¶28. In order to prove Roche committed the crime of commercial burglary, the State was required to prove he (1) broke and entered; (2) in the day or night; (3) any shop; (4) with intent to steal. Miss. Code Ann. § 97-17-33 (Rev. 2000). Considering the evidence in the light most favorable to the State, we find there was sufficient evidence with which to convict Roche of commercial burglary.

¶29. In the early morning hours, Officer Rickoll saw a black man with the same build as Roche, who, like Roche, was driving a Lexus, wearing a black outfit (including a black cap), and carrying a black jacket. The man (1) broke and entered; (2) at night; (3) the Sunflower store; and (4) stole change from the register tills. Shortly after the Sunflower break-in, officers stopped Roche and discovered $0.03 in pennies, $7.20 in nickels, $9.10 in dimes, and $11.50 in quarters. In light of these facts, which we view in the light most favorable to the State, we find that any rational juror could have found beyond a reasonable doubt that all of the elements had been met by the State in proving Roche committed the crime of commercial burglary. This issue is without merit.

13

*2. Weight of the Evidence*

¶30.    In ***Bush v. State***, we also discussed the standard which applies in a challenge to a verdict based on the weight of the evidence.

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.  We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.

> However, the evidence should be weighed in the light most favorable to the verdict.  A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.  Rather, as the 'thirteenth juror,' the court simply disagrees with the jury's resolution of the conflicting testimony.  This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves.  Instead, the proper remedy is to grant a new trial.

__ So. 2d at ___, 2005 WL 312039 at *4-*5 (footnotes, citations, & internal quotations omitted).

¶31.    Sitting as a limited "thirteenth juror" in this case, we cannot view the evidence in the light most favorable to the verdict and find an unconscionable injustice will result from the jury's determination of Roche's guilt.   The numerous consistencies between Rickoll's description of the perpetrator and Roche gave the jury more than enough evidence with which to convict.  This is particularly true in light of the early hour of the morning which the burglar broke into the store and Roche's appearance just an hour and a half later carrying a variety of demarcated change.  Furthermore, we cannot fault the jury for refusing to believe Roche's tenuous explanation for the presence of the change in his vehicle.  Roche testified that in a

14

mere thirty minutes he drove home, emptied his change jug, only counted out nickels and dimes, placed them in separate paper bags, and returned to Parkman's house. He further explained the $11.50 in quarters came from occasionally dropping change in his console, despite the fact that there were only twenty-three cents in other change there. The evidence by no means heavily preponderates against the verdict, and we affirm the trial court's decision to deny the Motion for New Trial.

## CONCLUSION

¶32. After a complete review of the trial record in the underlying case, we find the trial court properly admitted the evidence of Roche's identification as well as the evidence collected during the search of his car; the evidence was sufficient to convict; the verdict was not against the weight of the evidence; and Roche is procedurally barred from arguing the trial court erred in refusing to strike the entire jury panel. Accordingly, we affirm the Pearl River County Circuit Court's judgment.

¶33. **CONVICTION OF COMMERCIAL BURGLARY AND SENTENCE OF SEVEN (7) YEARS, AS AN HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**