IRVING, P.J.,
for the Court:
¶ 1. On August 10, 2010, a jury convicted Markeith Williams of armed robbery. The Grenada County Circuit Court sentenced him to forty years in the custody of the Mississippi Department of Corrections with twenty-five years to serve, fifteen years suspended, and fifteen years of post-release supervision, with five years supervised and ten years unsupervised.
¶ 2. Feeling aggrieved, Williams appeals and argues that: (1) the circuit court erred in admitting improper identification evidence; (2) he was prejudiced by improper character evidence presented at trial; (3) the circuit court erred in granting a jury instruction on flight; (4) he received ineffective assistance of counsel; and (5) the cumulative effect of the above errors deprived him of his right to a fair trial.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. On October 7, 2009, Tim Arora was working at the Race Way convenience store/service station in Grenada, Mississippi. At approximately 7:30 p.m., a tall, well-built man with “braids” in his hair entered the store and walked into the store’s restroom. When he came out of the restroom, he displayed a handgun and shoved Arora to the floor. A second man then entered the store. The man with braids in his hair went behind the counter, opened the cash register, and removed money from it. He also allegedly took envelopes containing large sums of money from the top of the store’s safe. The two men then left the store. Customers entered the store soon afterward, and Arora told them that the store had just been robbed. Arora called the police, and they arrived moments later.
¶ 5. Arora testified that the next day, the police asked him to look at a photographic lineup of eight individuals. He further testified that a police officer asked him if the first person pictured in the lineup was the first man that he had encountered during the robbery and explained: “[Tjhat’s the guy we got [sic].” Arora recalled telling the officer that the individual in the photograph could have been the person who had robbed the store but that he was not certain. Arora testified that he told the officer that he did not get a good look at the man’s face because he had his head down on the floor during the robbery. Arora could only remember that the man was tall, had braids in his hair, wore dark clothing, and had a bandana around his neck.
¶ 6. During Arora’s testimony, the State showed him a photographic lineup and asked him if he remembered signing his name anywhere on the lineup sheet. Aro-ra replied, “No, sir. I might have; I’m not sure.” The photographs were not entered into evidence, and the State did not ask Arora to identify Williams in court.
¶ 7. Next, the State presented testimony from Jeremy Ward and Cherrelle White, both of whom were at the Race Way near the time of the robbery. Ward testified that, on October 7, sometime between 7:00 p.m and 8:00 p.m., he and White drove to the Race Way to buy cigarettes. Ward testified that he parked his vehicle approximately ten to twelve feet from the store’s front door. Ward stated that it was almost dark outside when he arrived at the store, but the area where he parked his *471 vehicle was “lit up.” Shortly after parking his car, Ward saw two men exit the store and start running. He recalled that both men were wearing dark clothes. According to Ward, one of the men was wearing a hat, and the other was wearing a dark, hooded sweatshirt partly over his head, and a bandana around his neck. Ward testified that the man wearing the sweatshirt was taller than the other man, had a birthmark on the left side of his face, and had “dreads” in his hair. Ward testified that the taller man, with the birthmark, looked like Williams.
¶ 8. After the two men disappeared behind the store, Ward and White got out of their vehicle and entered the store. The clerk inside was on the phone and told them that the store had just been robbed. Ward and White then left the store.
¶ 9. The police located Ward and White later that evening and asked them to come to the police station and give a statement. At the police station, officers showed Ward and White a photograph of Williams and asked them if it depicted the man they had seen at the Race Way. Ward and White answered in the affirmative. Several days later, an officer brought a photographic lineup to White’s job. White picked Williams’s picture out of the eight individuals depicted in the lineup, and she signed her name above Williams’s photograph. White testified that she did so without assistance from the officer. The State introduced into evidence the photographic lineup containing White’s signature.
¶ 10. White testified that she was certain that Williams was the person she saw leaving the store on the night of the robbery. White explained that she knew Williams through her cousin but that she had not seen him in seven or eight years. Additionally, White testified that she could not remember Williams’s name when she saw him on the night of the robbery, but she recognized him by the birthmark on the left side of his face.
¶ 11. The State also presented testimony from Grenada Police Officer Doug Evans, who assisted in the investigation of the matter. Officer Evans testified that, on the evening of the robbery, he obtained a description of one of the suspects from Ward and White at the police station. Officer Evans recalled having had prior contact with an individual fitting that description, but he was unable to remember his name. Officer Evans contacted Officer Octavious Watt and provided him with a description of the suspect. Officer Watt knew an individual who matched the description and gave Williams’s name to Officer Evans. According to Officer Evans, he then “went to the jail and pulled up pictures on the computer” and later obtained a warrant for Williams’s arrest.
¶ 12. Officer Evans and another officer drove to Williams’s home to arrest him. However, as Officer Evans got out of the vehicle, he saw Williams and another individual running away. Other officers apprehended Williams approximately twenty minutes later. Officer Evans testified that when he asked Williams why he ran, Williams said that he “didn’t want to get caught.”
¶ 13. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Identification Evidence

¶ 14. Williams argues that the circuit court erred in denying his pretrial motion to suppress all pretrial identifications. Specifically, Williams maintains that the photographic lineup was impermissibly suggestive because his photograph clearly differed from the other individuals pic *472 tured in the lineup and that White’s and Ward’s in-court identifications were tainted by their initial identification of Williams by way of a single photograph.
1115. Our standard of review for a circuit court’s decision regarding pretrial identification is “whether or not substantial credible evidence supports the [circuit] court’s findings that, considering the totality of the circumstances, [the] in-court[-]identification testimony was not im-permissibly tainted.” Roche v. State, 913 So.2d 306, 310 (¶ 11) (Miss.2005) (quoting Ellis v. State, 667 So.2d 599, 605 (Miss.1995)). The circuit court’s decision generally will not be disturbed when it is supported by substantial, credible evidence supporting it. Id.
¶ 16. The Mississippi Supreme Court has held:
Only pretrial identifications which are suggestive, without necessity for conducting them in such a manner, are proscribed. A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissibly suggestive.
[[Image here]]
An impermissibly suggestive pretrial identification^ however,] does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermis-sibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification.
York v. State, 413 So.2d 1372, 1383 (Miss.1982) (internal citations and footnotes omitted). While, our supreme court has held that an initial identification by means of a single photograph is impermissibly suggestive, the inquiry does not end there. Christmas v. State, 10 So.3d 413, 419 (¶¶ 24-25) (Miss.2009). We must then “determine whether the identification was nonetheless reliable” after considering the Biggers factors. Id. at 419 (¶25) (citing Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). The factors include: “the opportunity of the witness to view the criminal at the time of the crime, the witness’s degree of attention, the accuracy of the witness’s prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.” Id. (quoting Roche, 913 So.2d at 311 (¶ 14)).
¶ 17. Williams’s motion to suppress claimed that he was “conspicuously singled out” in the photographic lineup used by law-enforcement officers. Williams explained that the lineup contained eight photographs, only four of which “could possibly fit” his general description. According to Williams’s motion, of these four photographs, only Williams’s photograph depicted an individual with his particular hair style and no facial hair.
¶ 18. Review of the photographic lineup shows that three other individuals had hairstyles similar to Williams’s, though in varying lengths. Additionally, even though Williams claims that no one else depicted in the lineup had facial hair similar to his, three other individuals had facial hair similar to Williams’s, and it is unclear from Williams’s photograph whether he had facial hair or not. Based on our review of the photographic lineup, Williams was not conspicuously singled out. Furthermore, the circuit court noted that both witnesses claimed to have recognized Williams by his birthmark, which was not clearly depicted in his photograph.
*473 ¶ 19. Williams also argues that Ward’s and White’s in-court identifications were tainted by their initial identifications of Williams by way of a single photograph. Our supreme court has consistently held that “[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup has been widely condemned.” Christmas, 10 So.Bd at 419 (¶ 22) (quoting Roche, 913 So.2d at 310-11 (¶ 12)). In Christmas, police officers showed a single photograph of Chancellor Christmas to a witness who was also a co-defendant. Id. at 418 (¶ 19). The witness identified Christmas as “the man with the gun” at the scene of the crime. Id. Our supreme court held that while the initial identification of Christmas was impermissibly suggestive, the identification was nonetheless reliable based on the Biggers factors. Id. at 420 (¶ 29).
¶20. Even though the lapse of time between the crime and the identification of Christmas as the suspect and the accuracy of the witness’s prior description weighed in Christmas’s favor, the additional Big-gers factors weighed in favor of admitting the identification testimony. Id. at 419 (¶ 27). The Court held that the witness “had ample opportunity to view [Christmas]” because he was “within only a few feet of [Christmas] for a significant period of time.” Id. at (¶ 28). Additionally, the witness’s testimony did not indicate hesitation when identifying Christmas as the suspect. Id.
¶ 21. In this case, both Ward and White testified at the suppression hearing that they identified Williams from a single photograph shown to them by police on the night of the robbery. The circuit court found that, while Ward’s and White’s initial identifications by way of a single photograph were impermissibly suggestive, their identifications of Williams were nonetheless reliable based on the Biggers factors. We agree.
¶22. Ward and. White testified that while they only saw Williams for a brief moment as he exited the Race Way, the area was well lit and both Ward and White were able to get a good look at his face. Additionally, both Ward and White claimed to have recognized Williams from previous encounters. While White stated with certainty that Williams was the man that she saw leaving the Race Way, Ward went only so far as to say that the man looked like Williams. However, “[a] witness does not have to be positive in his identification for his testimony to be competent before a jury.” York, 413 So.2d at 1373 n. 2 (citing Little v. State, 357 So.2d 379, 383 (Ala.Crim.App.1978)). Ward’s and White’s descriptions of Williams’s physical characteristics provided a degree of accuracy that permitted the authorities to find a suspect with the same characteristics within a few hours of the robbery. Finally, White identified Williams in a photographic lineup a few days after the robbery.
¶ 23. Based on the Biggers factors, we find that substantial, credible evidence exists to support the circuit court’s admission of the identification evidence at trial. This assignment of error is without merit.

2. Admission of 101(b) Evidence

¶ 24. Williams argues that Officer Evans’s testimony ran afoul of Mississippi Rule of Evidence 404(b).[1] Williams con *474 tends that Officer Evans’s testimony—that he was familiar with Williams and had obtained a photograph of him from the “jail’s computer”—prejudiced the jury. Williams acknowledges that he did not object to this testimony at trial.
¶ 25. As our supreme court has stated many times, “[a]ny claim is waived for failure to raise a contemporaneous objection.” Wells v. State, 903 So.2d 739, 742 (¶ 6) (Miss.2005) (citing Ballenger v. State, 667 So.2d 1242, 1272 (Miss.1995)). Because Williams failed to object to Officer Evans’s testimony at trial, this issue is procedurally barred.
¶ 26. Procedural bar notwithstanding, the circuit court did not err in admitting Officer Evans’s testimony. This Court has previously considered this issue in Brooks v. State, 788 So.2d 794 (Miss.Ct.App.2001). In Brooks, Lennis Brooks argued that the circuit court should have granted his motion for a mistrial following Officer Bryan Bailey’s testimony that he “went into our jail photos and pulled up a photo of Brooks.” Id. at 796 (¶ 8). Brooks argued that such testimony constituted evidence of his prior bad acts. Id.
¶ 27. This Court agreed with the circuit court’s determination that the reference to the “jail photo” was used to identify Brooks, not to prove his character. Id. at 796-97 (¶ 9). Accordingly, the testimony fell within the proof-of-identify exception to Rule 404(b). Id. at 797 (¶ 11). Finally, this Court determined that the circuit court properly found that the probative value of Officer Bailey’s statement outweighed the statement’s potentially prejudicial impact. Id. at 798 (¶ 18).
¶ 28. In this case, Officer Evans’s testimony was substantially similar to Officer Bailey’s testimony in Brooks. Officer Evans referenced Williams’s “jail photo” only to describe how he identified Williams as the robbery suspect. Thus, Officer Evans’s testimony did not violate Rule 404(b).
¶ 29. However, even if evidence of prior bad acts falls within a 404(b) exception, its prejudicial effect must still be measured against its probative value to determine admissibility under Rule 403 of the Mississippi Rules of Evidence. Brooks, 788 So.2d at 798 (¶ 13). Based on our holding in Brooks, we find that the probative value of Officer Evans’s testimony outweighed its potential prejudicial effect—especially where Williams’s “jail photo” was not introduced into evidence, was not repeatedly referred to, and was used only to identify Williams. Id. This issue is without merit.

3. Flight Jury Instruction

¶ 30. Williams argues that the circuit court erred in giving a flight instruction. The State submitted jury instruction S-5, which reads:
The Court instructs the [j]ury that flight is a circumstance from which guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt, that the defendant, Markeith Williams, did flee from the law[-]enforcement officers, then the flight of the Defendant is to be considered with all other evidence in this case.
You will determine from all of the facts whether the flight was from a conscious sense of guilt or whether other things caused it, and give it such weight as you think it is entitled to in determining the guilt or innocence of Markeith Williams.
¶ 31. At the outset, we note that Williams did not object to this instruction at trial; therefore, he is procedurally barred from raising this issue on appeal. *475 Goff v. State, 14 So.3d 625, 655 (¶ 118) (Miss.2005).
¶ 32. Procedural bar notwithstanding, we find no error in giving a flight instruction. Generally, “flight is admissible as evidence of consciousness of guilt.” Fuselier v. State, 702 So.2d 388, 390 (¶ 4) (Miss.1997) (citing Williams v. State, 667 So.2d 15, 23 (Miss.1996) (overruled on other grounds)). However, a flight instruction “is appropriate only where that flight is unexplained and somehow probative of guilt or guilty knowledge.” Id. (quoting Reynolds v. State, 658 So.2d 852, 856 (Miss.1995)). “Evidence of flight is inad-missable where there is an independent reason for [the] flight known by the court which cannot be explained to the jury because of its prejudicial effect upon the defendant.” Id. (quoting Williams, 667 So.2d at 23).
¶ 33. In Anderson v. State, 1 So.3d 905, 916 (¶ 34) (Miss.Ct.App.2008), this Court found no error with the circuit court’s decision to give a flight instruction. In Anderson, the police received a confidential-informant tip that Reginald Anderson had fled to Tennessee after committing aggravated assault. Id. at 909 (¶ 4). When Anderson returned to Mississippi, and the police went to arrest him, they found him hiding under a house. Id. Anderson stated that he was hiding underneath the house because he was “afraid of going back to jail.” Id. at 916 (¶ 33). We reasoned:
Anderson’s flight was never fully explained .... Anderson has failed to provide an independent explanation for why he was hiding under his house on the day of his arrest. Anderson attempts to argue on appeal that he was hiding because he feared he was being “set up.” However, there is nothing in the record to support this argument. The only reason that Anderson gave at trial for hiding under the house was that he was a convicted felon and afraid of going back to jail.

Id.

¶ 34. Here, Officer Evans testified that Williams stated that he ran from the police on the evening of October 7 because he “didn’t want to get caught.” The statement does not constitute a sufficient independent reason for fleeing and is probative of guilty knowledge. As such, the circuit court did not err in giving a flight instruction. This assignment of error is without merit.

Jp. Ineffective Assistance of Counsel

¶ 35. Williams argues that his trial counsel was ineffective for failing to renew objections to Ward’s, White’s, and Arora’s pretrial identifications of him, for failing to object to Officer Evans’s testimony, and for failing to object to the flight instruction. Generally, we do not consider claims of ineffective assistance of counsel on direct appeal unless there is sufficient evidence within the record to evaluate the claim. Harden v. State, 59 So.3d 594, 603-04 (¶ 21) (Miss.2011). However, we find such evidence in the record before us.
¶ 36. To succeed in a challenge to the effectiveness of counsel, Williams must show that his “counsel’s performance was deficient, and ... the deficient performance prejudiced [his defense] such that, but for counsel’s deficient performance, the result would have been different.” Id. at 603 (¶ 20) (citing Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Williams must overcome the “strong but rebuttable presumption ... that counsel’s decisions constituted reasonable trial strategy within ‘the wide range of reasonable professional assistance.’” Id. (quoting Strickland, 466 U.S. at 688,104 S.Ct. 2052).

*476
A.Failure to Object to Identification Evidence

¶ 37. Williams’s trial counsel raised an objection at the suppression hearing because Ward and White identified Williams from a single photograph. However, the circuit court found that based on the Biggers factors, the identification procedures were not so impermissi-bly suggestive as to make the identification evidence unreliable. Consequently, there was no reason for trial counsel to make an additional objection to the identification evidence at trial. Arora’s pretrial identification of Williams via the photographic lineup was not entered into evidence, and the State did not seek an in-court identification of Williams from Arora. Thus, because the State did not admit any identification evidence through Arora’s testimony, there was no reason for Williams’s trial counsel to object. Accordingly, this issue is without merit.

B.Failure to Object to Officer Evans’s Testimony

¶ 38. Based on our previous discussion and conclusion that Officer Evans’s testimony was admissible and not prejudicial, Williams’s claim that his trial counsel was ineffective for failing to object to said testimony is without merit.

C.Failure to Object to Jury Instruction on Flight

¶ 39. Based on our previous discussion and conclusion that the circuit court did not err in giving the flight instruction to the jury, Williams’s claim that his trial counsel was ineffective for failing to object to the instruction is without merit.

5. Cumulative Error

¶40. Williams argues that, assuming this Court does not find any individual error sufficiently egregious to require reversal, the cumulation of errors in this case is cause for reversal. Having found no individual errors in this case, there can be no cumulative error. Osborne v. State, 54 So.3d 841, 848 (¶ 27) (Miss.2011). Thus, this issue is without merit.
¶ 41. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWENTY-FIVE YEARS TO SERVE, FIFTEEN YEARS SUSPENDED, AND FIFTEEN YEARS OF POST-RELEASE SUPERVISION, WITH FIVE YEARS SUPERVISED AND TEN YEARS UNSUPERVISED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. Rule 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.