ROBERTS, J.,
for the Court:
¶ 1. Kenith Lamar Anderson was convicted in the Madison County Circuit Court of possession of marijuana with the intent to distribute, while in possession of a firearm. He was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years suspended and five years of supervised probation. Anderson filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial. The circuit court denied the motion, and Anderson timely filed the present appeal solely arguing that the circuit court erred in denying his motion to suppress. Finding no error, we affirm the *319 circuit court’s denial of Anderson’s motion to suppress.
FACTS AND PROCEDURAL HISTORY
¶ 2. Anderson was indicted on one count of possession of marijuana with intent to distribute, while in possession of a firearm. Anderson initially entered a guilty plea to the charge, and his guilty plea was accepted on the condition that he would be eligible for house arrest. It was later determined that Anderson was not eligible for house arrest; therefore, the circuit court allowed him to withdraw his guilty plea. Anderson withdrew his guilty plea, and he elected to proceed to trial. Prior to trial, Anderson filed a motion to suppress the evidence recovered from his vehicle, arguing the evidence was obtained as a result of an illegal search and seizure. The following recitation of facts is based on evidence and testimony presented at Anderson’s suppression hearing held on October 10, 2012.
¶ 3. On January 31, 2012, Master Sergeant John Harris and Communications Officer Keishawn McDonald of the Madison County Sheriffs Department were patrolling several Canton, Mississippi apartment complexes after the police department received complaints from the apartment management of loitering and possible drug deals occurring on the premises. Sergeant Harris testified he pulled into Madison Heights apartment complex and noticed a car “double parked,” meaning the car was taking up two parking spaces. Sergeant Harris pulled alongside the car, and he got out of his vehicle to ask the car’s driver, Anderson, why he was improperly parked. Neither Sergeant Harris nor Officer McDonald could remember whether the patrol ear’s blue lights were turned on at the time. Officer McDonald, who was still in the patrol car, testified that as Anderson got out of his car, Anderson dropped a clear plastic bag of a green leafy substance, later determined to be marijuana, back onto the driver’s side floorboard. Officer McDonald exited the patrol car and relayed that information to Sergeant Harris, who then walked to the passenger-side window and was able to see the bag on the floorboard. Upon seeing the marijuana, Sergeant Harris forced Anderson to place his hands on the vehicle so he could search the car. Officer McDonald testified that Anderson was not handcuffed until the initial bag of marijuana was recovered. A search of Anderson’s car resulted in the recovery of more bags of marijuana, digital scales, and a firearm.
¶ 4. Anderson presented a differing version of the events. Jericho Dortch, a resident of the Madison Heights apartment complex and Anderson’s childhood friend, testified that he and Anderson had been riding around together earlier that day. He had left a bag of marijuana in Anderson’s car and called Anderson on the telephone to ask him to bring it back to him. According to Dortch, Anderson returned to Madison Heights, pulled into one parking spot, exited the car, and was standing on the sidewalk before the patrol car pulled into the parking lot. The patrol car did not have the blue lights activated. Sergeant Harris proceeded to ask Anderson for his license and what he was doing. He then asked Anderson to put his hands on the hood of the car and handcuffed him. Dortch testified that Sergeant Harris then searched Anderson’s car. Anderson’s cousin, Erica Shields, testified that Anderson’s car was parked only in one space. Lastly, Anderson testified. He stated he was already standing on the sidewalk talking to Dortch when the patrol car pulled up, without its blue lights on, and Deputy Harris asked Anderson what *320 he was doing. Sergeant Harris got out of the patrol ear and asked Anderson for his license and asked him to put his hands on the hood of the car. According to Anderson, Sergeant Harris then handcuffed him and sat him on the curb, and he searched Anderson’s car. Anderson stated that Officer McDonald did not exit the patrol car until after Sergeant Harris had handcuffed him.
¶ 5. The circuit court denied Anderson’s motion to suppress. It stated that after hearing the conflicting testimony, it “found the credibility of the State’s witnesses to exceed that of the Defense’s witnesses!.]” Further, Officer McDonald’s testimony that he witnessed Anderson drop a bag of marijuana onto the floorboard was sufficient probable cause to search Anderson’s vehicle. Anderson’s trial lasted two days and resulted in a jury convicting him as charged in the indictment. He was sentenced to twenty-five years in the custody of the MDOC, with twenty years suspended and five years of supervised probation. Anderson filed a motion for a JNOV or, in the alternative, a new trial, which the circuit court denied.
¶ 6. He then filed the current appeal and argues that “[t]he [circuit] court erred in denying [his] motion to suppress the evidence found in the unauthorized search of his car.”
ANALYSIS
¶ 7. “Determinations of reasonable suspicion and probable cause should be reviewed de novo.” Lee v. State, 100 So.3d 982, 984 (¶ 8) (Miss.Ct.App.2012) (quoting Dies v. State, 926 So.2d 910, 917 (¶ 20) (Miss.2006)). However, the “decision to admit or exclude evidence is reviewed under the abuse-of-discretion standard.” Id. (citing Baker v. State, 991 So.2d 185, 187
(¶ 6) (Miss.Ct.App.2008)). Further, “[i]n reviewing the denial of a motion to suppress, we must determine whether the trial court’s findings, considering the totality of the circumstances, are supported by substantial credible evidence.” Moore v. State, 933 So.2d 910, 914 (¶ 9) (Miss.2006). “We will not disturb the circuit court’s findings of fact on appeal unless the circuit court applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.” Anderson v. State, 16 So.3d 756, 758 (¶ 6) (Miss.Ct.App.2009) (citing Moore v. State, 933 So.2d at 914 (¶9)).
¶ 8. Anderson’s sole argument is that all evidence recovered from his vehicle was obtained as a result of an unreasonable search and seizure. Anderson classifies the events that occurred as a Terry investigatory stop.[1] According to Anderson, Sergeant Harris lacked probable cause or a reasonable suspicion to initiate a traffic stop of Anderson, even assuming he was parked in two spaces, because parking in two spaces is not a violation of any Mississippi statute. Further, Anderson submits that the automobile exception to a war-rantless search did not apply because the initial traffic stop was not valid.
¶ 9. A police officer’s activities generally can be broken into three categories: (1) a “voluntary conversation, during which an officer is allowed to have a voluntary communication with an individual regardless of what facts are known to the officer because it involves no force and no detention of the individual interviewed”; (2) a Terry stop, which involves an “investigative stop and temporary detention” in order “to settle an ambiguous situation without having sufficient knowledge to justify an arrest”; and, (3) an arrest based on *321 probable cause. Couldery v. State, 890 So.2d 959, 962 (¶7) (Miss.Ct.App.2004) (citing Singletary v. State, 318 So.2d 873, 876 (Miss.1975)). Therefore, we first have to determine what type of action Sergeant Harris initially took.
¶ 10. Neither Sergeant Harris nor Officer McDonald could recall whether the blue lights were initiated; however, both Anderson and Dortch testified that the blue lights were not initiated when the patrol ear pulled beside Anderson’s vehicle. Sergeant Harris testified that he and Anderson exited their vehicles at the same time, and they began “to communicate as to why [Anderson] was parked illegally.” Sergeant Harris asked for Anderson’s driver’s license before Officer McDonald informed him of what he had seen Anderson do while exiting his car. Sergeant Harris explained: “If I wanted to stop [Anderson], I would have stopped him on Holmes Avenue by activating my blue lights instead of turning into the apartment complex.” When asked if the reason Sergeant Harris pulled in beside Anderson was to ticket him for improper parking, he responded: “The reason I pulled in beside him was to figure out why he was improperly parked.... ” Officer McDonald’s testimony corroborates Sergeant Harris’s testimony. Office McDonald stated that at the time he informed Sergeant Harris of what he had seen Anderson do, Anderson was standing in front of the car. Anderson was not handcuffed nor were his hands on the hood of the car. According to Officer McDonald, “Anderson was [not] placed into custody until [Sergeant Harris] got [the bag of marijuana] in [his] possession.” Based on our analysis of the record, Sergeant Harris’s initial contact with Anderson falls under the category of a voluntary conversation.
¶ 11. Sergeant Harris’s initial contact was a voluntary conversation; however, Sergeant Harris also had sufficient reasonable suspicion to conduct a Terry investigatory stop of Anderson based on what Officer McDonald had seen and relayed to him. To justify a Terry stop, “the officer must have a reasonable suspicion ‘that criminal activity may be afoot.’ ” Harrell v. State, 109 So.3d 604, 607 (¶ 8) (Miss.Ct.App.2013) (quoting Terry, 392 U.S. at 30, 88 S.Ct. 1868). In the present case, the criminal activity was Anderson’s possession of marijuana. Once Sergeant Harris observed the bag of marijuana in plain view on the floorboard of Anderson’s vehicle, he handcuffed Anderson and searched the vehicle for any other evidence. “When an officer determines an illegal substance is in plain view, the officer then has probable cause to make an arrest and search the vehicle.” Mosley v. State, 89 So.3d 41, 46 (¶ 15) (Miss.Ct.App.2011) (citing McCollins v. State, 798 So.2d 624, 628 (¶ 17) (Miss.Ct. App.2001)).
¶ 12. In summary, while patrolling an area with recent complaints of possible illegal drug activity, Sergeant Harris pulled into the parking spot adjacent to Anderson’s spot, and he asked Anderson to see his driver’s license and asked why he was improperly parked. Such actions could be described as engaging in a voluntary conversation. But after Officer McDonald informed Sergeant Harris that he saw Anderson drop a bag of what appeared to be marijuana onto the floorboard of the car, Sergeant Harris developed a reasonable suspicion that criminal activity — possession of marijuana — was occurring. This justified the temporary detention of Anderson. Sergeant Harris then personally observed the bag of marijuana in plain view on the floorboard of Anderson’s car. Upon seeing the marijuana, Sergeant Harris arrested Anderson for possession of marijuana based on the fact *322 that Sergeant Harris determined criminal activity was occurring and that Anderson was the perpetrator. After finding marijuana in plain view and arresting Anderson, Sergeant Harris was justified in searching the remainder of Anderson’s car where the gun, scales, and more marijuana were recovered.
¶ 13. We find that the circuit court did not abuse its discretion in denying Anderson’s motion to suppress; therefore, this issue is without merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE, WHILE IN POSSESSION OF A FIREARM, AND SENTENCE OF TWENTY-FIVE YEARS, WITH TWENTY YEARS SUSPENDED AND FIVE YEARS OF SUPERVISED PROBATION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).