## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-00912-COA

TREVOR HOSKINS                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2013 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF DOMESTIC AGGRAVATED ASSAULT AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $7,517.26 IN RESTITUTION |
| DISPOSITION: | AFFIRMED: 01/27/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

PROCEDURAL HISTORY

¶1. A jury in the Washington County Circuit Court found Trevor Hoskins guilty of domestic aggravated assault. The trial court sentenced Hoskins to twenty years to serve in the custody of the Mississippi Department of Corrections. Hoskins filed post-trial motions,

which were denied by the trial court.  Hoskins now appeals and asserts the trial court erred by allowing photographs of the victim's injuries into evidence because they were more prejudicial than probative.  He also raises several other issues in his pro se supplemental brief, which we will also consider.

FACTS

¶2.     Trevor Hoskins and Linda Taylor were in a relationship and living with Taylor's aunt and uncle, Wanda and Amos Taylor, in Greenville, Mississippi.  On the way home from work one night, Hoskins stopped to pick up Taylor's sister.  Taylor testified that Hoskins and her sister had been drinking.  Taylor started drinking.  Hoskins left to run an errand and returned with his nephew.[1]  Hoskins then drove Taylor and her sister to May's Café, a local club, and dropped them off.  He came back a short time later to pick them up.  Hoskins and Taylor took Taylor's sister and Hoskins's nephew home.

¶3.     On the way home, Hoskins began arguing with Taylor about her ex-boyfriends. Hoskins passed the house and drove towards the Lighthouse Point Casino.  Instead of turning towards the casino, however, Hoskins went to an area nearby where people fish.  Taylor testified that as Hoskins was driving, he was saying he was going to "f*** her up."  Hoskins stopped the car and told Taylor to get out.  When she refused, he started hitting her.  He dragged her out of the car, beat her down to the ground, and started kicking her.  Taylor was able to get back in the car, but Hoskins followed and started choking her.  Taylor testified that she felt like she was going to pass out, but her head fell to the side and she was able to catch her breath.  Hoskins then tried to gouge Taylor's eyes out.  He started biting her face

---

[1] Taylor testified Hoskins said it was his cousin.

2

and body. Taylor testified that as he was biting her ear, he shook his head and growled like an animal. Taylor grabbed his face and tried to get him off of her. Hoskins then pulled her out of the vehicle again. As Taylor tried to defend herself with her boot, Hoskins continued to kick and hit her. Taylor eventually passed out. When she woke up, Hoskins saw that she was moving and began kicking her again. Hoskins went to his car and retrieved a rusty knife. Taylor testified she was drifting in and out of consciousness. She stated she did not remember him cutting her, but woke up with lacerations to her neck. Hoskins continued to assault her. Taylor stated Hoskins halted his assault when she began to pray. He asked her what she was going to tell her family. Satisfied with the answer, he took her home. Wanda called the police, and Taylor was transported by ambulance to the hospital.

¶4.     Hoskins denied being with Taylor when she received the above injuries. Hoskins testified that after he brought Taylor's sister and Hoskins's nephew home, Taylor complained about the short amount of time she got to spend at May's Café, so he dropped her off there alone. He stated that he drove around for over forty-five minutes waiting on her. He testified that he passed by the club several times, but did not see her. Hoskins testified that when he finally saw Taylor, she was down on her hands and knees. He said he picked her up, put her in his car, and took her to her aunt and uncle's house.

DISCUSSION

I.     PHOTOGRAPHS

¶5.     Hoskins argues that the trial court erred by allowing photographs of Taylor's injuries into evidence because they were more prejudicial than probative and only served to inflame the jury. According to Mississippi Rule of Evidence 403, relevant evidence may be excluded

3

"if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "The decision of whether or not to admit photographs is left to the sound discretion of the trial [court] and will not be disturbed on appeal absent an abuse of discretion." *Smith v. State*, 792 So. 2d 343, 348 (¶20) (Miss. Ct. App. 2001) (citing *Sudduth v. State*, 562 So. 2d 67, 69 (Miss. 1990)). "The trial [court's] discretion on whether or not to admit photographs 'runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.'" *Id.* (quoting *Hart v. State*, 637 So. 2d 1329, 1335 (Miss. 1994)).

¶6.    In *McNeal v. State*, 551 So. 2d 151, 159 (Miss. 1989), the Mississippi Supreme Court laid out the criteria to consider when determining whether photographs offered by the State were more prejudicial than probative.  It opined that "the trial court must consider (1) whether the proof is absolute or in doubt as to [the] identity of the guilty party, [and] (2) whether the photographs are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury." *Id*.  The Mississippi Supreme Court has also stated that stipulating to what the State hopes to prove by the photos is not a bar to admissibility.  *Hughes v. State*, 735 So. 2d 238, 263 (¶100) (Miss. 1999).

¶7.    At trial, Hoskins objected to the admissibility of the photographs on the ground that they were cumulative.  Five of the eleven photographs that were admitted into evidence either showed close-ups of four of Taylor's wounds or a different perspective of one of the wounds.  The trial court overruled the objection, stating that the photographs "show different things that are covered in the case."  The identity of Taylor's assailant was contested in this

4

case, and while the photographs that were admitted into evidence do not tend to prove the assailant's identity, the State also had to prove Taylor suffered serious bodily injury. Furthermore, the State had to prove that at least one of her injuries was caused by a deadly weapon, specifically a knife.

¶8. The photographs, while somewhat cumulative, were more probative than prejudicial, and the trial court acted within its discretion by allowing them into evidence. The close-up photographs showed the severity of Taylor's individual wounds, while the other photographs showed those wounds in relation to her body or to other wounds. The photograph of the lacerations to Taylor's neck tended to prove that a knife was used. When Taylor moved her neck a certain way, her wounds opened up, revealing the extent of the lacerations. Hoskins argues that the extent of Taylor's wounds was not contested and that the photographs were therefore not necessary to establish that she had in fact been injured or how she had been injured. Regardless of whether the extent of Taylor's wounds was contested, the State carried the burden of proving serious bodily injury caused by a deadly weapon. The photographs did not rise to the level of gruesomeness in *McNeal*, or more recently, *Bonds v. State*, 138 So. 3d 914, 918 (¶7) (Miss. 2014), which showed decomposing, maggot-infested flesh. The pictures were taken to preserve evidence of the severity of Taylor's injuries and were not offered to inflame the jury. This issue is without merit.

II.    MOTIONS AND OBJECTIONS

¶9. Hoskins asks this Court to review the trial court's decisions regarding two motions and several objections. The first of these concerns a motion for a mistrial. Investigator Larry Quijas testified that he went to the Lighthouse Point Casino to conduct an investigation.

5

Hoskins objected, claiming the State had failed to disclose any information regarding this investigation. The trial court allowed Hoskins to interview the witness. Hoskins renewed his objection and motion for a mistrial. The trial court sustained the objection to the proffered testimony and instructed the jurors to disregard Quijas's testimony, but he denied the motion for a mistrial.

¶10. We cannot find any error by the trial court in denying the motion for a mistrial. The trial court properly sustained the objection, granted Hoskins what he requested, and properly instructed the jury to disregard Quijas's testimony regarding his investigation at the casino. That the jury heard about an investigation and then was asked to disregard it was not so prejudicial as to warrant a mistrial. This issue is without merit.

¶11. The second motion was Hoskins's pro se motion to suppress evidence, specifically the knife. Hoskins argues that this motion should have been heard orally and that it was a denial of due process to admit the knife because it was obtained through an illegal search and seizure. The trial court did address Hoskin's motion orally in chambers prior to voir dire.

¶12. According to the plain-view doctrine, a police officer may seize an object in plain view if the officer can see it from a place he has a lawful right to be, the object's "incriminating character is readily apparent[,] and the officer has a lawful right of access to the evidence." *McKee v. State*, 878 So. 2d 232, 236 (¶9) (Miss. App. Ct. 2004) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). Probable cause is also a necessary element under the plain-view doctrine. *Id.* Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more." *Roche v. State*, 913 So. 2d

6

306, 313 (¶23) (Miss. 2005) (quoting *Dyson v. State*, 527 U.S. 465, 467 (1999)) (quotations omitted).

¶13. The knife was on the driver's side floorboard in plain view. There was a large amount of blood throughout the vehicle. The officer testified he photographed the vehicle as part of his investigation because he thought it could be part of the crime scene. The vehicle was readily mobile. Given the amount of blood in the vehicle, there was cause to believe the vehicle contained evidence of the crime and that the knife had been used to inflict injury. As stated above, the search fell within the plain-view and automobile exceptions to the warrant requirement, and this issue is without merit.

¶14. Lastly, Hoskins contends the trial court erred in not sustaining several of his objections made during trial. These include his objections to hearsay statements made by Taylor's aunt, the admission of photographs of Taylor's house, testimony involving blood splatter, the admission of a photograph of Hoskins's hands, and expert testimony regarding injuries other than the lacerations to Taylor's neck. Hoskins does not cite to any authority to support his argument, nor does he allege points of error with enough specificity to conduct a review. He makes blanket assertions and nothing more. A review of the record does not reveal any obvious error on the part of the trial court; therefore, we find this issue to be without merit.

### III. PROSECUTORIAL MISCONDUCT

¶15. Hoskins argues prosecutorial misconduct occurred several times in this case, resulting in reversible error. First he states that the trial court should have sustained his objection to statements made by the prosecutor during cross-examination. Hoskins does not state with

7

any specificity which statements he is referring to, but a review of the record reveals one specific objection that was overruled. Those statements were: "There's no other testimony here yesterday or today that anybody else did this other than you, Trevor Hoskins," and "[s]o nobody saw anybody else [do] it. Linda Taylor clearly identif[ied] you as doing it." We cannot say the trial court erred in allowing those statements. They did not express an opinion and were factual in nature. This issue is without merit.

¶16.    Second, Hoskins argues that the trial court should have sustained his objection to statements made during the prosecutor's closing argument because they were not based on fact or evidence. The prosecutor argued, "All of us have ears in here. It is cartilage. There is not going to be any blood spurting from your ear." "A prosecutor is entitled to argue inferences based upon the evidence at trial." *Holland v. State*, 705 So. 2d 307, 345 (¶152) (Miss. 1997) (citing *Foster v. State*, 639 So. 2d 1263, 1290 (Miss. 1994)). We do not find the trial court abused its discretion in overruling Hoskins's objection. There was evidence adduced at trial that Taylor's ear had been bitten off, and there was blood all over the vehicle. Hoskins testified that the blood droplets in and on his vehicle came from Taylor's ear injury. The prosecutor was allowed to draw the conclusion and make the inference that it was the violent nature of the assault that took place inside and outside of the vehicle that was responsible for the blood droplets. This issue is without merit.

¶17.    Hoskins also contends that the trial court erred in allowing the prosecutor to state during voir dire that the victim had been stabbed. He states there is no evidence in the record to support the prosecutor's proposition. Hoskins failed to raise an objection. "[I]ssues not presented to the trial court for lack of [a] contemporaneous objection are procedurally barred,

8

and error, if any, is waived." *Goff v. State*, 14 So. 3d 625, 655 (¶118) (Miss. 2009) (citations and quotations omitted). This issue is therefore procedurally barred.

¶18. Hoskins also alleges that the trial court erred in allowing the prosecutor to state that he dropped Taylor off at her aunt's house after she was assaulted. However, Hoskins testified that he found Taylor bloody and beaten, picked her up and put her in his car, and took her to her aunt's house. This issue is without merit.

### IV. PERJURY

¶19. Hoskins alleges that Quijas committed perjury when he said he went to the casino to investigate. Hoskins also alleges that the prosecutor used perjured testimony to obtain a conviction. More specifically, Hoskins seems to argue that the prosecutor's statement that Hoskins dropped Taylor off at her aunt's house after she was assaulted came from perjured testimony. However, Hoskins offers no proof to support these claims. They are blanket assertions and lack merit.

### V. CONFLICTING TESTIMONY

¶20. Hoskins points out that Sergeant Markricus Hibbler, the officer who responded to Wanda's house, testified that Taylor told him Hoskins had brought her home from the café, as opposed to the area near the casino. Hoskins seems to argue that this conflict between the two testimonies warrants reversal. Likewise, Hoskins argues that there is no medical evidence to support Taylor's testimony that she was stabbed. Where evidence is conflicting, "the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980). The credibility of witnesses is not for this Court to review. *Id.* (citations omitted). These issues are without

9

merit.

## VI. SUFFICIENCY OF THE EVIDENCE

¶21.    Hoskins challenges the sufficiency and weight of the evidence. In reviewing the sufficiency of the evidence, "the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citation and internal quotation marks omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id*. Furthermore, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. *Davis v. State*, 866 So. 2d 1107, 1112 (¶17) (Miss. Ct. App. 2003).

¶22.    Hoskins' argument rests on the lone assertion that the emergency-room physician did not testify that the lacerations to Taylor's neck were caused by a knife. A knife was found on the driver's side floorboard of Hoskins's vehicle. Taylor testified that she saw Hoskins go to his vehicle to retrieve the knife. The investigator testified that Taylor had received a puncture wound to her back, and that it looked like Taylor had been stabbed. He also testified that Taylor had lacerations on her neck, and that it looked like somebody had cut her. The emergency-room physician testified that at least one of her wounds was caused by "some sort of instrument." This evidence raises an inference that Hoskins caused or attempted to cause serious bodily injury with a knife. The verdict is supported by the evidence. This issue is without merit.

10

## VII.  WEIGHT OF THE EVIDENCE

¶23.  Hoskin contends the guilty verdict is against the overwhelming weight of the evidence.  "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."  *Bush*, 895 So. 2d at 844 (¶18).  The evidence is viewed in the light most favorable to the verdict.  *Id*.

¶24.  Hoskin's argument is similar to that expressed in the previous issue.  From the evidence described in the previous issue, we cannot find that allowing the verdict to stand would sanction an unconscionable injustice.  This issue is without merit.

## VIII.  SENTENCING

¶25.  Hoskins argues that he was prejudiced during the sentencing hearing when the State offered evidence of his criminal history.  Three of Hoskins's felony charges had not been adjudicated.  "This Court has consistently held that a sentence will be upheld if within statutory limits."  *Sanders v. State*, 678 So. 2d 663, 669 (Miss. 1996) (citations and quotations omitted).  Hoskins received the statutory maximum sentence for domestic aggravated assault.  Given the extent of Taylor's wounds, the trial court did not abuse its discretion in sentencing Hoskins to twenty years.  This issue is without merit.

## IX.  TRIAL TRANSCRIPT

¶26.  Hoskins contends the State removed pages of the trial transcript in bad faith, specifically pages 44, 88, 145, 146, and 191.  A review of the trial transcript reveals that these pages are not missing nor blank.  This issue is without merit.

X. SPEEDY TRIAL

¶27. Lastly, Hoskins argues that he was denied his right to a speedy trial. Hoskins was arrested on or about February 21, 2012. He asserted his right to a speedy trial on March 2, 2012. He was indicted on January 14, 2013, and arraigned on March 4, 2013. Other than making his demand, Hoskins never brought the matter before the trial court.

¶28. According to Mississippi Code Annotated section 99-17-1 (Rev. 2007), "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Hoskins was tried seventy days after he was arraigned; therefore, the 270-day rule was not violated.

¶29. The right to a speedy trial is also protected by the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890.[2] "[T]he constitutional right to a speedy trial attaches at the time of arrest rather than arraignment." *Sharp v. State*, 786 So. 2d 372, 380 (¶15) (Miss. 2001) (citation omitted). This Court applies the balancing test from *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine constitutional speedy-trial violations. *Barker* requires us to examine the following factors: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id*. This analysis is conducted whether or not the

---

[2] On appeal, Hoskins does not argue that his constitutional rights were violated, but we will address them because his demand for a speedy trial was made pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. *See Sharp v. State*, 786 So. 2d 372, 377 (¶4) (Miss. 2001) (addressing Sharp's constitutional right because the underlying motion addressed his constitutional right).

defendant pursued his right to a speedy trial to a ruling by the trial court. *Young v. State*, 891 So. 2d 813, 817-19 (¶¶6-14) (Miss. 2005).

*A. Length of Delay*

¶30.    Three hundred and seventy-seven days passed between the date of arrest and trial. This factor weighs in favor of Hoskins. The Mississippi Supreme Court has determined that "any delay of more than eight months is presumptively prejudicial." *Id.* at 816-17 (¶5) (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)). The delay factor alone, however, is not sufficient for reversal. *Id.* at 817 (¶5) (citing *DeLoach v. State*, 722 So. 2d 512, 517 (¶16) (Miss. 1998)). A close examination of the remaining *Barker* factors is required. *Id.*

*B.  Reason for the Delay*

¶31.    As in *Young*, the record in this case does not contain anything relevant to this Court's review of Hoskins's constitutional speedy-trial claim, other than a joint motion for continuance filed on April 4, 2013. Because Hoskins failed to pursue his demand for a speedy trial both at trial and in his post-trial motions, there are no findings on the record, no trial court order to review, and no response from the State as to the reason for the delay.

*C.  Assertion of the Right*

¶32.    Hoskins asserted his right soon after he was arrested. This factor weighs in favor of Hoskins.

*D. Prejudicial Effect of the Delay*

¶33.    The Mississippi Supreme Court has said:

> The *Barker* Court identified three interests protected by the right to a speedy trial that are to be considered when determining whether a defendant has been prejudiced by a delay in bringing him to trial: (1) the interest in preventing

13

oppressive pretrial incarceration, (2) the interest in minimizing anxiety and concern of the accused, and (3) the interest in limiting the possibility that the defense will be impaired. Of these three interests, the last is the most important, and when violated, the most prejudicial to the defendant. *Barker*, 407 U.S. at 532.

*Young,* 891 So. 2d at 818 (¶14).

¶34. There is nothing in the record to indicate that Hoskins was prejudiced by the delay. Hoskins's brief also fails to address how he was prejudiced by the delay. He makes the allegation that he was deprived of his right without offering more.

¶35. "Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved." *Id.* Hoskins failed to do so. On appeal, he has failed to show that an improper reason for the delay exists and that he was prejudiced by the delay. This issue is without merit.

¶36. **THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF DOMESTIC AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY $7,517.26 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**