# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00432-COA

**DAN MACK TURNAGE A/K/A DUKE**                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                   **APPELLEE**

DATE OF JUDGMENT:          03/13/2023
TRIAL JUDGE:               HON. BRAD ASHLEY TOUCHSTONE
COURT FROM WHICH APPEALED: LAWRENCE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER
                           BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:         HALDON J. KITTRELL
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 05/28/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Dan Mack "Duke" Turnage was convicted by a Lawrence County Circuit Court jury of possession of a controlled substance. The court sentenced him to forty years in the custody of the Mississippi Department of Corrections, with twenty years to serve day-for-day and the remaining twenty years suspended, with five years of reporting post-release supervision pursuant to Mississippi Code Annotated section 47-7-34 (Rev. 2015). Turnage appeals his conviction claiming the trial court erred by not suppressing the evidence seized during an allegedly warrantless search of his truck. Finding no error, we affirm.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

¶2.     On August 15, 2020, an ambulance was dispatched to 298 Roy Schmidt Road in Sontag, Mississippi. Upon arrival, paramedics discovered Brandy Turnage in critical condition. Brandy was transported by ambulance to a landing area where she would be airlifted to a Jackson hospital. During transportation, Brandy's husband, Dan Turnage, followed the ambulance in his own truck. Tyler Blalock, the paramedic inside the ambulance, testified that he observed Turnage driving erratically and noted that at several moments, it appeared that he was attempting to strike the ambulance from the back and run it off of the road. The incident was reported to the Lawrence County Sheriff's Department.[1]

¶3.     On August 18, 2020, Sheriff Ryan Everett of the Lawrence County Sheriff's Department arrived at Dan Turnage's residence to speak to Turnage about the ambulance incident. Upon entry onto the property, Sheriff Everett observed Turnage and Barry Tabor[2] sitting in Turnage's parked truck in the front yard.[3] When they saw Sheriff Everett, Turnage and Tabor exited and stepped away from the truck in a "hurried manner." Sheriff Everett testified that as he was speaking with Turnage, who was standing near the truck, he observed what appeared to be drug paraphernalia in plain view on the truck's front seat. Sheriff Everett detained Turnage and Tabor and called for backup so that a search could be conducted. Shortly thereafter, Chief Deputy Brad McLendon arrived at the scene. Sheriff

---

[1] The ambulance company filed charges against Turnage after the sheriff's department booked and arrested Turnage on the possession charge at issue in this opinion.

[2] Tabor was Turnage's co-defendant until their cases were severed.

[3] This truck was the same one involved in the ambulance incident that had occurred three days prior.

Everett observed Tabor reach inside the front pocket of his pants, which prompted the sheriff to search Tabor's person. A .40-caliber pistol was seized from inside Tabor's pocket. Both Tabor and Turnage were handcuffed. Clint Hedgepath, a narcotics investigator, also arrived on the scene. During a search of the truck, law enforcement found a camouflaged bag that contained a metal container. Officers opened that container and discovered more suspected methamphetamine, which was then seized. The substance was later determined to be 11.86 grams of methamphetamine. Turnage and Tabor were arrested, and Turnage was charged as a habitual offender with possession of a controlled substance.

¶4. On November 3, 2021, Turnage was indicted by a Lawrence County grand jury for possession of controlled substance with intent to distribute[4] with an enhanced penalty[5] along with a habitual offender enhancement.[6] On March 2, 2023, Turnage filed a motion to suppress and exclude "all evidence obtained as a result of the illegal search of his personal property and curtilage, violating his constitutional rights as afforded to him[.]" On March 6, 2023, a hearing on Turnage's motion to suppress took place. The court denied the motion and signed a subsequent order, providing that "although law enforcement did not have a

---

[4] This charge was brought under Mississippi Code Annotated sections 41-29-139(a) and 41-29-139(b)(1)(C) (Rev. 2018).

[5] The enhancement was brought under Mississippi Code Annotated section 41-29-147 (Rev. 2018) for a subsequent controlled substance offense. This was based on Turnage's December 7, 2007 conviction for possession of a controlled substance.

[6] The habitual offender enhancement was brought under Mississippi Code Annotated section 99-19-81 (Rev. 2020). Turnage's habitual offender status was based on a December 7, 2007 conviction for possession of a controlled substance, and a February 18, 2016 conviction for possession of a controlled substance.

3

search warrant, the search fell within the automobile exception to the Fourth Amendment's requirement to have a warrant." The court's findings will be discussed in detail in the analysis below. On March 7, 2023, Turnage filed a motion in limine to prohibit the prosecution from introducing evidence making references to "[a]ny statements or testimony not directly relevant to the indicted charges . . . including, but not limited to" the ambulance incident.[7]

¶5. On March 8, 2023, a trial took place. However, Turnage was not present. A bench warrant was issued. Turnage's attorney filed an ore tenus motion for a continuance. After hearing the motion outside of the presence of the jury venire, the court determined that Turnage "voluntarily absented himself from trial" and that he therefore waived his right to be present for his trial pursuant to Mississippi Rule of Criminal Procedure 10.1.[8] The trial proceeded with Turnage *in absentia*.[9]

¶6. The State called Clint Hedgepath. At the time of the crime, Hedgepath worked for the Lawrence County Sheriff's Department as the captain of narcotics over the investigation division. Hedgepath testified that on August 18, 2020, Sheriff Everett called him to

---

[7] At the beginning of trial, this motion was heard. The court denied the motion and found that evidence of the ambulance incident could be used to "establish that [Turnage] was driving the vehicle, ha[d] control of it, that it operate[d]."

[8] After issuing the bench warrant, the court gave Sheriff Everett until 9:30 a.m. to locate Turnage. When this time expired, Turnage had not been located. The court supplemented the record with the sworn testimony of Sheriff Everett as to this fact.

[9] To remedy the fact that Turnage was not present in the courtroom for identification purposes, the parties stipulated in jury instructions that "[Turnage] as identified by the witnesses is [Turnage][.]"

Turnage's residence to "take possession of possibl[e] narcotics that were found during a[n] investigation." When he arrived, he observed Turnage and Tabor in handcuffs "standing near the front of" Turnage's truck. Sheriff Everett showed Hedgepath what appeared to be "crystal methamphetamine,"[10] "a couple of glass pipes," and "some more miscellaneous stuff . . . found during the[] investigation[.]" Hedgepath stated he conducted a further search and found "three separate clear plastic-type baggies," each containing what was later determined to be crystal methamphetamine. The State moved to have the methamphetamine entered into evidence. Turnage renewed his objection to suppress the methamphetamine. The court overruled the objection, and it was entered into evidence.

¶7. The State called Archie Nichols, who worked for the Mississippi Forensics Laboratory. Nichols was tendered and accepted as an expert in the field of drug analysis and identification. Nichols testified he conducted the chemical analysis of the methamphetamine recovered from Turnage's vehicle. Nichols's report from this analysis was admitted into evidence. This report conclusively identified the substance as 11.86 grams of methamphetamine.

¶8. The State called Sheriff Everett, who testified that he had gone to Turnage's residence to "[s]peak with him about a previous matter." When he arrived, he observed Turnage and Tabor sitting in Turnage's truck,[11] which was parked "on the north side of the house."

---

[10] A crime lab analysis ultimately determined this fact.

[11] Sheriff Everett testified that he determined this truck belonged to Turnage because he ran a search of the tag number, which revealed that the truck was registered in Turnage's name.

Sheriff Everett testified that "whenever they recognized it was [Sheriff Everett], they got out of the truck in a hurried manner." Sheriff Everett walked over to the truck to speak with Turnage and Tabor and "looked inside the truck." He "[d]idn't open the door[,]" but "looked through the windows," which were "down." He noticed what appeared to be a "meth pipe." He could not recall if he saw a couple of pipes or "just one." At this point, Sheriff Everett detained Turnage and Tabor and "did a brief look in the truck" and found a camouflaged bag which contained a "substance" in it. Suspecting that this substance was narcotics, he contacted Hedgepath. On cross-examination, Sheriff Everett testified that "based on [his] training and experience, the appearance [of the pipe] and the residue that was in it [was] consistent with 21 years of being around meth pipes and people that have had them in their possession."

¶9.    The State called Tyler Blalock, a paramedic who responded and rendered care to Turnage's wife, Brandy, on August 15, 2020. While on the scene, Blalock noticed Turnage's blue truck parked on the property. He observed a man "leaned against [the] inside [of] the door" of the truck. While transporting Brandy by ambulance, Blalock observed that Turnage's blue truck was following the ambulance. He stated he saw "the person driving the vehicle very close" and identified this individual as the man who he observed leaning against the truck when Blalock arrived on scene. A photograph of Turnage was admitted for the limited purpose of Blalock's identification of Turnage "as being the operator of [the] vehicle." Blalock positively identified Turnage as the "male that was leaning against the blue vehicle and was operating the vehicle." The court took judicial notice that the picture

6

depicted Turnage.

¶10.    The State called Barry Tabor, who was arrested and charged with possession of a controlled substance along with Turnage.  Tabor testified that on August 18, 2020, he "had been replacing a water pump" on Turnage's truck.[12]  He testified that he and Turnage planned on driving to the hospital to take Brandy some clothing.  Turnage placed a bag in the truck, and Tabor assumed the bag contained clothes for Brandy.  He stated he had no knowledge of anything other than clothing being in the bag.  He admitted to having "some weed in the truck on the console" as well as carrying a .40-caliber pistol on his side.  As he and Turnage were preparing to leave, the police arrived.  On cross-examination, Tabor testified he was not offered anything by the State to testify.  After the State rested, Turnage filed a motion for a directed verdict.[13]  The court denied the motion.  Turnage did not call any witnesses.  After the defense rested, Turnage renewed his motion for a directed verdict, which the court again overruled.

¶11.    After hearing all the testimony and considering all the evidence, the jury convicted Turnage of the lesser-included crime of possession of a controlled substance.  Sentencing was withheld until Turnage could be located and incarcerated on a bench warrant.  His sentencing hearing finally took place on March 10, 2023.  According to the circuit court's amended sentencing order entered on March 13, 2023, Turnage was sentenced to forty years

[12]  Tabor testified he gave Turnage the truck "about a month or two before" the subject incident.

[13]  Turnage argued the State did not prove the elements of constructive possession.  Further, Turnage argued the State did not prove any intent to distribute.

in the custody of the Mississippi Department of Corrections, with twenty years to serve day-for-day and the remaining twenty years suspended, with five years of reporting post-release supervision. The court applied the enhancement provisions under section 41-29-147[14] for subsequent offenses, doubling the sentence imposed under sections 41-29-139(c)(1)(D) and 99-19-81. The court suspended the time imposed pursuant to Mississippi Code 41-29-147.

¶12. On March 20, 2023, Turnage filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial.[15] The court denied this motion. Turnage now appeals, claiming that "[t]he searches of the interior of [his] truck and the bag were illegal warrantless searches and the trial court erred in allowing the fruits of these searches to be admitted into evidence." He further argues that "the automobile exception [did] not legitimize the search of Turnage's truck since both exigency and probable cause were lacking and no other exception to the warrant requirement applied." Although Turnage argues the inapplicability of several warrant exceptions, we find that the automobile exception and the plain view exception are dispositive of the issue, and our discussion is therefore limited to those points of law.

**STANDARD OF REVIEW**

---

[14] At the sentencing hearing, the court made an initial sentencing ruling where the court "neglected to consider" the enhancement under section 41-29-147. The judge made an on-the-record finding of this omission and amended the sentencing order to reflect the enhancement.

[15] In this motion, Turnage argued (1) the search of his vehicle was improper and the evidence should not have been admitted, (2) his motion for a directed verdict should have been granted, and (3) the interests of justice require a new trial be granted due to Turnage's absence at trial.

¶13. The standard of review for a trial court's denial of a motion to suppress based on an unlawful search or seizure is mixed. *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010) (citing *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)). Whether reasonable suspicion or probable cause exists is subject to a de novo review. *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999). Our review of the trial court's determinations of "historical facts" is applied using "the substantial evidence and clearly erroneous standards." *Buford v. State*, 323 So. 3d 500, 504 (¶11) (Miss. 2021) (citing *Eaddy v. State*, 63 So. 3d 1209, 1212 (Miss. 2011)(1)). Thus, "[i]n reviewing the denial of a motion to suppress, we must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence." *Id.*

## DISCUSSION

¶14. Turnage argues the trial court erred by denying his motion to suppress the 11.86 grams of methamphetamine seized because the police lacked probable cause to search his truck. He further claims the automobile exception to the warrant requirement did not apply because his truck was "not readily mobile," and there were no "exigent circumstances." After a hearing, the trial court denied Turnage's motion to suppress and found that "although law enforcement did not have a search warrant, the search fell within the automobile exception to the Fourth Amendment's requirement to have a warrant." The court cited *Hoskins v. State*, 172 So. 3d 1242, 1248 (¶12) (Miss. Ct. App. 2015) (quoting *Roche v. State*, 913 So. 2d 306, 313 (¶23) (Miss. 2005)), for the premise that "under the automobile exception, 'if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth

Amendment permits police to search the vehicle without more.'" The order also provided the following:

> In the instant case, the Lawrence County Sheriff arrived at Turnage's home for a "knock and talk." When he arrived, the Sheriff saw Turnage and another person sitting in the cab of a pickup truck parked on the property. This truck was reported days earlier in an incident involving a moving ambulance, so the Sheriff believed the truck was readily mobile. Turnage and the other person exited the truck but remained standing nearby. While talking to Turnage, the Sheriff noticed what he believed was drug paraphernalia on the front seat of the truck. This provided the probable cause to search the rest of the truck's cab. During that search, the Sheriff's Department found illegal drugs.

¶15.    The Fourth Amendment "proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions.'" *Roche,* 913 So. 2d at 313 (¶22) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967))). A search usually is not unreasonable when it is, in fact, based on probable cause. *Walker v. State*, 881 So. 2d 820, 827 (¶15) (Miss. 2004).

¶16.    Turnage argues that "Sheriff Everett's observation of the glass pipes" did not amount to probable cause to search the truck because "[i]t was not readily apparent that Turnage's truck contained evidence of any other crime." Turnage avers that the discovery of the glass pipes "at best . . . created a suspicion, less than probable cause." The State responds that probable cause arose when Sheriff Everett observed the drug paraphernalia in plain view. Although the trial court did not discuss the plain view exception in its order denying

10

Turnage's motion to suppress, we find that its discussion is warranted in this case.[16]

¶17.    The Mississippi Supreme Court has held that "[p]robable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Walker*, 881 So. 2d at 827 (¶15) (citing *Godbold v. State*, 731 So. 2d 1184, 1189 (Miss. 1999); *Craig v. State*, 739 So. 2d 410, 412 (Miss. Ct. App.1999)).  Further, the Supreme Court has recognized that "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Id*. at (¶19) (holding that there was probable cause for the search of defendant's vehicle without a warrant where ephedrine, an over-the counter-drug used to make methamphetamine, was seen in plain view).  "[P]olice officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle as thorough as a magistrate could authorize by warrant." *Franklin v. State*, 587 So. 2d 905, 907 (Miss. 1991) (citing *Fleming v. State*, 502 So. 2d 327, 329 (Miss. 1987)).  Law enforcement does not have to "shrug their shoulders" and ignore illegal substances and items in plain view. *Singletary v. State*, 318 So. 2d 873, 877 (Miss. 1975).  They can legally conduct a

---

[16] It is the customary practice, in the name of judicial economy, for an appellate court to affirm the trial court if the right result is reached even though for the wrong reason. *Towner v. State*, 837 So. 2d 221, 225 (¶9) (Miss. Ct. App. 2003) (citing *Puckett v. Stuckey*, 633 So. 2d 978, 980 (Miss.1993)).  Therefore, even though the trial court did not acknowledge the plain view exception in its order, we will not reverse because it failed to do so.

seizure and search based on that plain view of contraband. *Walker*, 881 So. 2d at 827 (¶19); *see also Anderson v. State*, 127 So. 3d 317, 321 (¶11) (Miss. Ct. App. 2013) (holding "when an officer determines an illegal substance is in plain view, the officer then has probable cause to make an arrest and search the vehicle").

¶18. Here, it is undisputed that Sheriff Everett was lawfully on Turnage's property to discuss a prior incident. Sheriff Everett testified that when he arrived, Turnage and Tabor were sitting in Turnage's parked truck, but they exited the truck "in a hurried manner." While speaking to Turnage and Tabor, Sheriff Everett testified that he looked through the open window of Turnage's truck and observed a glass "meth pipe" containing residue in plain view on the front seat of the truck. Sheriff Everett further testified that the appearance of the pipe was consistent with meth pipes he observed in his twenty-one years of training and experience in law enforcement. Possession of drug paraphernalia is a crime in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2020). *See Chaney v. State*, 749 So. 2d 1078, 1081 (¶16) (Miss. Ct. App. 1999). Accordingly, this observation raised probable cause to suspect that evidence of further contraband was contained in the vehicle. This allowed Sheriff Everett to conduct a search of Turnage's truck for evidence of contraband. *Jim v. State*, 911 So. 2d 658, 660 (¶12) (Miss. Ct. App. 2005). This search resulted in the discovery of a bag with a "substance" in it, which was ultimately proved to be methamphetamine. Accordingly, giving deference to the trial court's findings of the underlying facts and applying the plain view doctrine, we hold that there was substantial evidence to support the court's finding of probable cause, and we find no error.

¶19.    Having established the existence of probable cause, we now turn to Turnage's argument that the automobile exception to the warrant requirement did not apply to the search of his truck.  The Mississippi Supreme Court has held that "there has long been an automobile exception to the warrant requirement where probable cause exists."  *Smith v. State*, 724 So. 2d 280, 312 (¶123) (Miss. 1998) (citing *McNeal v. State*, 617 So. 2d 999 (Miss. 1993); *Barry v. State*, 406 So. 2d 45, 47 (Miss. 1981); *Hall v. State*, 288 So. 2d 850, 851 (Miss. 1974)).  Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more."  *Roche*, 913 So. 2d at 313 (¶23) (quoting *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)).  Furthermore, "once an officer obtains probable cause to search a vehicle, then probable cause exists to search **all compartments of the vehicle and all containers**" therein where the contraband could be.  *Millsap v. State*, 767 So. 2d 286, 292 (¶22) (Miss. Ct. App. 2000) (emphasis added) (citing *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir.1993)); *see also Comby v. State*, 901 So. 2d 1282, 1286 (¶7) (Miss. Ct. App. 2004) (citing *California v. Acevedo*, 500 U.S. 565, 576 (1991)).  "[I]f officers have probable cause to believe that contraband is in only one part of a car, then they are limited to that area.  If, on the other hand, officers have probable cause to believe that contraband is located somewhere in a car, but they don't know exactly where, then they can search the entire vehicle."  *Millsap*, 767 So. 2d at 292 (¶22) (limiting the search of a car to the trunk since the dog sniff indicated only the trunk).

¶20.    Turnage claims the automobile exception to the warrant requirement did not apply

because his truck "was not readily mobile." However, the trial court found that Sheriff Everett believed the truck was "readily mobile" due to its involvement in the ambulance incident just "days earlier." Further, it is clear from the record that Turnage's truck was readily mobile. Sheriff Everett testified that when he arrived at Turnage's property, Turnage and Tabor were sitting in the truck. Furthermore, Tabor testified that he and Turnage were preparing to drive the truck to deliver clothes to Turnage's hospitalized wife, Brandy. It appears that Turnage is arguing that, because the truck was not actively in motion prior to the search, it was not readily mobile. However, the Mississippi Supreme Court has rejected the suggestion that the automobile exception does not apply when a vehicle is immobilized. *Franklin*, 587 So. 2d at 907. This argument is without merit.

¶21. Turnage also claims that the automobile exception does not apply because there were no exigent circumstances involved as he "presented no risk of flight nor threat to tamper with evidence because he was handcuffed." The State argues in its response that Turnage's argument is "contrary to the holding in *Roche v. State*, where the Supreme Court settled the question by holding that there is no separate exigency requirement attached to the automobile exception." At the hearing on Turnage's motion to suppress, there was argument as to whether Mississippi has a separate exigency requirement. Ultimately, the judge found that "even if [there is] not" a separate exigency requirement, there were exigent circumstances because Turnage "could plausibly leave the scene."

¶22. The Mississippi Supreme Court held the following in *Roche*, 913 So. 2d at 313 (¶23):

> In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.

14

Ct. 2485, 135 L. Ed.2d 1031 (1996) (per curiam), we repeated that **the automobile exception does not have a separate exigency requirement**: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits police to search the vehicle without more.' *Id*. at 940.

(Emphasis added). Accordingly, for the automobile exception to apply, the court needed to find that Turnage's car was readily mobile and that there existed probable cause for its search.

¶23. Turnage claims that *Roche* did not abrogate the exigency requirement and cites *Jim v. State*, 911 So. 2d 658, 661 (¶¶13-14) (Miss. Ct. App. 2005), which was decided five months after the Supreme Court's decision in *Roche*. In that case, a police officer stopped the defendant's vehicle for a traffic violation. *Jim*, 911 So. 2d at 659 (¶2). *Id*. The officer observed three passengers in the car and a "brown paper bag in plain view," which contained alcohol. *Id*. All occupants of the vehicle were under twenty-one years of age. *Id*. at (¶3). The officer arrested the defendant and his passengers and searched the vehicle for other contraband. *Id*. at (¶¶3-4). The officer opened the glove box and discovered marijuana. *Id*. The defendant moved to suppress the warrantless search of his vehicle, which the court denied. *Id*. at 660 (¶9). The defendant appealed and claimed that the automobile exception did not apply because the officer "did not have the exigency need" for the search. *Id*. at (¶10). On appeal, this Court discussed the exigency requirement set forth in *Sanders v. State*, 678 So. 2d 663, 667 (Miss. 1996). *Id*. at (¶11). This Court then emphasized that the defendant's car "was in motion" when the officer pulled it over and that the officer had "probable cause to search the vehicle for contraband." This Court held the following:

15

Similarly, in *Roche v. State* the Supreme Court found the same two exigency factors and the court determined that the facts justified the issuance of a warrant to search the vehicle. Thus, "The car was **readily mobile, and probable cause existed to believe it contained contraband**; therefore, the Fourth Amendment permitted the officers to search the vehicle without a warrant.

*Id*. at 661 (¶14) (emphasis added) (quoting *Roche*, 913 So. 2d at 313 (¶23)). On those grounds, this Court held that the search of the defendant's vehicle "fit[] squarely into the automobile exception." While this Court referenced the exigency requirement, it ultimately emphasized and heeded the precedent in *Roche*, which held that the existence of a readily movable car and probable cause satisfied the requirements under the automobile exception. Like the search that took place in *Jim*, the search of Turnage's truck fit squarely into the automobile exception under the precedent set in *Roche*. Accordingly, Turnage's claim as to the exigency requirement fails.

## CONCLUSION

¶24. The trial court did not err by denying Turnage's motion to suppress because there was substantial evidence that the police had probable cause to search his vehicle under the plain view exception. Additionally, the court did not err in finding that the automobile exception allowed police to conduct a complete search of Turnage's truck. Accordingly, Turnage's conviction and sentence are affirmed.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

16